## Bramblet's Heirs *vs* Picket's Heirs.

APPEAL FROM THE BOURBON CIRCUIT.

*Construction of contracts. Lapse of time.*

CHIEF JUSTICE ROBERTSON delivered the opinion of the Court.

IN 1794 *Martin Picket,* of Virginia, being indebted to Reubin Bramblet, then of the same state, £350, for a small tract of land, to be conveyed by the latter to the former, "when called for after the 1st of October, 1795," they agreed in writing, that *Bramblet* might take, in satisfaction of that debt, 500 acres out of a tract of 5000 acres of land in Bourbon, Kentucky, which had been granted to *Picket:* but, as there were conflicting claims on the said larger tract, it was agreed that *Bramblet* should select 500 acres wherever he might choose, "at "either end, or on any line or lines, so as not to injure the "figure or remaining part of the tract" of 5000 acres— and *Picket* covenanted to refund the said sum of £350, one-third in September, 1795—one-third in November, 1796, and the remaining third in November, 1797, in the event of *Bramblet's* failure to obtain 500 acres of first rate land, "clear of dispute," or of his being evicted after selecting 500 acres and settling thereon.

In a short time after the date of that contract, Bramblet removed to Kentucky and settled on the said tract of 5000 acres, near the south eastern corner thereof—the boundary of the entire tract, forming a parallelogram; and there he continued to reside until his death in 1806, when he devised his homestead and 400 acres around it, to members of his family, who, or others claiming under them, have occupied that land ever since. When Bramblet first settled on the land, the whole 5000 acres were covered with conflicting claims.

On a bill filed many years ago for a specific execution of the said contract, the Circuit Court decreed a conveyance for 500 acres, including the land which had been thus occupied by Bramblet and his successors, but in a form rendered irregular by the exclusion of two conflict-

BRAMBLET'S H'S.    ing claims, on which there had been more than 20 years
     *vs*          continued occupancy, adverse to Picket and Bramblet.
PICKET'S HEIRS.

Both parties complain of that decree. Bramblet's heirs complain because the decree includes a small portion in the south-eastern corner of the 5000 acres covered, as they insist, by a title superior to that of Picket—and the heirs of Picket seek a reversal also, because, as they contend, the said 500 acres ought to have been decreed in a square without regard to adversary claims.

A purchaser a-greeing to take 500 acres out of a 5000 acre tract of land, "at either end or on any line, so as not to injure the figure of the remainder," electing a corner, shall go equal lengths on each line of the angle from the corner.

Had there been no conflicting claims on the 5000 acre tract, there would be no doubt that whenever Bramblet elected to take his 500 acres on the south-eastern angle, he should have been restricted to a square, occupying equal distances on each line of that angle. And we have as little doubt that as the entire survey of 5000 acres was covered by conflicting claims, Bramblet had no right to discriminate between those claims, so as to change the form of his 500 acres from that of a square.

Nor have we any doubt that *Bramblet* should be presumed to have made his election to take his 500 acres in the angle where he settled. His subsequent conveyance to *Picket* of the tract sold to him in Virginia, his never exacting or claiming the £350, payable in 1795-6-7, and his actual settlement, residence, and death on the land, and his passing it by devise, conduce irresistibly to the conclusion that he elected to take the 500 acres where he had thus settled, and that this election was made when he settled, or in a short time thereafter.

A possession so taken and acquiesced in for 20 years, will not be changed at the instance of the vendor.

Nevertheless, it is our opinion that Picket's heirs have no just cause to complain of the decree as rendered, for two reasons: 1st, because Picket or his heirs should be presumed to have known that Bramblet and his devisees held and claimed the 500 acres essentially as assigned by the decree, and seem to have acquiesced in such a boundary until the statute of limitations might protect the occupants under conflicting titles, which would be embraced by 500 acres in a square, and are excluded by the decree; and 2d, Because, by a compromise made between *Picket's* heirs and *Bramblet's* devisees and heirs, in the year 1817, they agreed that the 500 acres should be laid off *in the said angle*, including *the land settled on and improved as aforesaid,* "on

*some one* of the lines of the survey of 5000 acres, in *a con-*
*venient form,"* thereby clearly implying that the boundary
of the 500 acres was not to be a square, equally on both
lines of the south eastern angle—for, had a square been
intended, it would have been expressed, and there would
have been no propriety in the circuitous and inconsistent
description as made; and moreover, a square would in-
clude land which Bramblet never improved, or seems to
have claimed, or intended to embrace within the scope of
his 500 acres.

Nor have the devisees and heirs of Bramblet any suffi- Nor will it be
cient ground for excepting to the decree. The agreement changed at the
instance of the
of 1817 expressly included the angle which they wish now purchaser, espe-
cially when he
to exclude; and moreover, not only is there no proof in and his heirs have
this record, which would authorize the judicial deduction session for more
that Picket's is not the best title to all the land now sought than 20 years.
to be excluded, but it appears that this land was all claim-
ed by Bramblet as a portion of his 500 acres, under
Picket, and that the interfering claim was bought by
Bramblet's successors more than 20 years ago. And
surely it is now too late to insist that this long occupancy
was not under Picket, but was adverse to his title, and
thereby subject his heirs to a loss of land to which their
title may have been the best, and which land, therefore,
might have been always held securely, as it should be
deemed to have been held in fact, under that title.

We are, therefore, of the opinion that there is no es-
sential error in the decree, prejudicial to either party.

Consequently, the decree is affirmed.

*Morehead & Reed and T. P. Smith* for appellants;
*Owsley & Goodloe and Robinson & Johnson* for appel-
lees.